## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## TYLER DIVISION

| | | |
|---|---|---|
| **VINE STREET LLC** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | |
| **vs.** | § | **CASE NO. 6:03-CV-223** |
| | § | |
| **JAMES R. KEELING, As Independent** | § | |
| **Executor of the Estate of David Bart** | § | |
| **Keeling, Sr., Deceased** | § | |
| **et al.** | § | |
| | § | |
| **Defendants** | § | |

## <u>ORDER</u>

Before the Court are Defendant Borg Warner Corporation's ("Borg Warner") Motion for Summary Judgment (Docket No. 212) and Defendants Maytag Corporation ("Maytag") and Fedders Corporation's ("Fedders") Motion for Partial Summary Judgment (Docket No. 221). Having fully considered the parties written submissions, the Court now **GRANTS** in part and **DENIES** in part both motions.

The issues and evidence presented in Borg Warner's Motion are substantially similar to the issues and evidence analyzed by the Court in its March 24, 2005 Memorandum Opinion and Order (Docket No. 184). Because of this similarity, the Court will not issue another memorandum opinion and order. The Court accordingly **GRANTS** summary judgment on the negligence claims, concluding that they are time barred  by the applicable statute of limitations, and dismisses those claims with prejudice. The Court **DENIES** summary judgment on the CERCLA and SWDA claims, concluding that genuine issues of material fact exist with regards to Borg Warner's status as an arranger. The Court also concludes that the non-existence of the machinery does not raise fatal evidentiary concerns that at this time would warrant dismissal of the CERCLA or SWDA claims,

so the Court again **DENIES** summary judgment on those claims.

For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part Maytag and Fedders' Motion for Summary Judgment.

## BACKGROUND

Plaintiff Vine Street LLC ("Vine Street") owns property (hereinafter "the property") located at 914 West Glenwood Street in Tyler, Texas. From 1949 through 1996, the property was jointly owned by the families of Sol Roosth and A.S. Genecov. In 1996, ownership of the property was transferred to Stephen Roosth ("Roosth"). In 2001, Roosth formed Vine Street, and in 2002, transferred ownership of the property to Vine Street.

From 1961 through 1975, the property was leased to the late David Bart Keeling, Sr. ("Keeling"), who operated the College Cleaners Laundromat. Plaintiff alleges, based on the deposition testimony of Keeling's children, that the College Cleaners laundromat had Norge[1] coin-operated dry-cleaning machines, and that these machines' defective design and operation caused perchloroethylene ("PERC"), a common dry-cleaning fluid, to escape into the soil, contaminating the property and adjacent lots.

In 1998, the Rite-Aid pharmacy chain considered purchasing the property and conducted an environmental study. The results of the study and their possible role in Rite-Aid's decision to not purchase the property are unknown. Sometime after the Rite-Aid study, Roosth commissioned environmental studies on the property and in June 2001, confirmed environmental contamination.

---

[1]Norge was apparently a leading maker of dry-cleaning and laundry equipment during this time period. In 1968, Fedders bought Norge from Borg-Warner. In 1979, Fedders sold Norge to Magic Chef Corporation. In 1986, Magic Chef merged with Maytag.

In March 2002, Plaintiff applied to participate in the Texas Natural Resource Conservation Commission's ("TNRCC")[2] voluntary cleanup program, and in July 2002, notified Keeling's son James that PERC contamination had been confirmed.  In May 2003, Plaintiff commenced this action against the estate of Keeling.  In March 2004, Plaintiff amended its complaint to include Maytag and Fedders, two previous owners of Norge.  In October 2004, Plaintiff amended its complaint to include Borg-Warner, another previous owner of Norge.  In November 2004, Maytag and Fedders filed third-party complaints against Dow Chemical Company ("Dow"), the alleged maker of the PERC that contaminated the property.  In January 2005, Maytag and Fedders non-suited Dow pursuant to Federal Rule of Civil Procedure 41, but shortly thereafter, Plaintiff amended its complaint to include Dow as a defendant.  In July 2005, Plaintiff filed a stipulation of dismissal, again non-suiting Dow pursuant to Rule 41.

Plaintiff's alleges violations of the Comprehensive Environmental Response Compensation and Liability Act of 1980 ("CERCLA"), 42 U.S.C. § 9601, *et seq.,* and  the Texas Solid Waste Disposal Act ("SWDA"), Texas Health and Safety Code §361.001, *et seq.*  Plaintiff seeks to recover costs incurred in remedying the environmental contamination at the property.  Plaintiff also seeks to recover economic damages relating to diminution in the value of the property and to lost rentals, as well as attorney and expert witness fees.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

---

[2]In September 2002, the TNRCC changed its name to the Texas Commission on Environmental Quality ("TCEQ").

any material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c).  "The substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc.*,  477 U.S. 242, 248 (1986).

A party moving for summary judgment "has the burden of showing that there is no genuine issue of fact." *Id.* at 256.  Once that burden is met, the burden shifts to the non-movant to "set forth specific facts showing that there is a genuine issue for trial." *Id.*  "This burden is not satisfied with some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated assertions, or by only a scintilla of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)(internal citations omitted).  In determining whether a genuine issue of fact exists, the Court views all evidence in the light most favorable to the non-movant.  *See Bodnar v. Synpol, Inc.*, 843 F.2d 190, 192 (5th Cir. 1988), *cert. denied*, 488 U.S. 908 (1988).

## ANALYSIS

Maytag and Fedders assert that under both CERCLA and SWDA, Plaintiff may not, as a matter of law, seek economic damages or litigation-related fees.   The Court will analyze both assertions together since SWDA is substantially similar to CERCLA.  *See R.R. Street & Co., Inc. v. Pilgrim Enterprises, Inc.,* 81 S.W. 3d 276, 291 (Tex. App. – Houston [1st Dist.] 2001, no pet.).  *See also Blackmon v. Hansen*, 169 S.W. 2d 962, 964-65 (Tex. 1943)(when the Texas state legislature adopts a statute with wording substantially similar to a federal statute, it must be presumed that the legislature intended to adopt the construction placed on that wording by the federal courts, and the

courts should look to federal cases and the federal statute as a guide in interpreting the state statute).

"CERCLA is not a general vehicle for toxic tort claims." *Young v. U.S.,* 394 F.3d 858, 862 (10th Cir. 2005). Rather, it is a narrowly tailored statute designed in part to allow private litigants to recover the "necessary costs of response" incurred in remedying environmental contaminations. 42 U.S.C. § 9607(a)(4)(B). As such, "CERCLA does not provide compensation to a private party for damages resulting from contamination" and only "permits a private party to be reimbursed for all or some of the costs already incurred in response to contamination." *Gussack Realty Co. v. Xerox Corp.,* 244 F.3d 85, 91 (2d Cir. 2000). Because recovery is limited to response costs,[3] Plaintiff "cannot recover . . . for any alleged diminution in value to their property," as diminution in value falls under the umbrella of unrecoverable economic damages, not recoverable response costs. *Rhodes v. County of Darlington,* 833 F. Supp. 1163, 1181 (D. S.C. 1992). Similarly, "lost income [is] not recoverable under CERCLA." *Piccolini v. Simon's Wrecking,* 686 F. Supp. 1063, 1068 (M.D. Pa. 1988). The Court therefore concludes that as a matter of law, Plaintiff may not seek recovery for the property's diminution in value or lost rentals.

Although economic damages may not be recovered under CERCLA, some attorney and expert fees are recoverable, if those fees are not solely "litigation-related fees" and if they fall under the umbrella of response costs. *Key Tronic Corp. v. U.S.,* 511 U.S. 809, 819 (1994). "[W]ork that is closely tied to the actual cleanup may constitute a necessary cost of response . . . [if] such efforts significantly benefitted the entire cleanup effort." *Id.* at 120. For example, "[t]racking down other responsible solvent polluters increases the probability that a cleanup will be effective . . . [and

---

[3]"The terms costs and damages are assigned mutually exclusive definitions under CERCLA. The term damages is defined . . . to mean damages for injury or loss of natural resources. Costs . . . refer[s] to costs of removal, response, or remedial action incurred in connection with the release of or disposal of hazardous wastes." *Regan v. Cherry Corp.,* 706 F. Supp. 145, 151 (D. R.I. 1989)(internal citations omitted).

therefore entails] recoverable costs of response clearly distinguishable from litigation expenses." *Id.*

Maytag and Fedders have presented evidence – unrebutted by Plaintiff – showing that all attorney fees incurred by Plaintiff are expenses related to this litigation and are not expenses related to the actual cleanup.   The Court therefore concludes that as a matter of law, Plaintiff may not recover attorney fees under CERCLA or SWDA.  Similarly, because four of Plaintiff's six experts have been retained solely for this litigation, the Court concludes that as a matter of law, their fees are not recoverable.[4]  Because one can reasonably infer that the work of Plaintiff's other two experts was tied to the actual cleanup, the Court declines to grant summary judgment with regards to the recovery of their fees.[5]

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Borg-Warner's Motion for Partial Summary Judgment with regards to Plaintiff's claims under CERCLA and SWDA for lost rentals, diminution in value of its property, and litigation-related attorney and expert fees, and **DENIES** the Motion with regards to Plaintiff's claims for any expert fees potentially related to the cleanup.

---

[4]Craig Chesley has been retained to report on the market value of the property, Bruce Dale has been retained to analyze the design of Norge dry-cleaning machines, Gerald Levine has been retained to testify about dry cleaning industry standards, and Richard Fortuna has been retained to testify about the public health dangers of PERC.

[5]Plaintiff has not yet met its burden of showing that the fees incurred by Alan Eggelston or Aaron Weager are recoverable. Indeed, Maytag and Fedders may ultimately prevail on this issue, if presented to the Court after trial. However, fact issues presently surround whether the work of Eggelston and Weager was closely tied to the cleanup, therefore precluding summary judgment.

6

**So ORDERED and SIGNED this 16th day of August, 2005.**

**LEONARD DAVIS**
**UNITED STATES DISTRICT JUDGE**